### NEW YORK & PORTO RICO S. S. CO. v. UNITED STATES.

District Court, S. D. New York. Oct. 13, 1931.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City. (Eugene Underwood, of New York City, of counsel), for plaintiff.

George Z. Medalie, U. S. Atty., of New York City (George B. Schoonmaker, Asst. U. S. Atty., of New York City, of counsel), for the United States.

WOOLSEY, District Judge.

I give judgment for the defendant with costs.

I. This is a suit brought against the United States under the Tucker Act (28 USCA § 41(20), giving the District Court jurisdiction of claims against the United States, not involving matters of tort, up to the amount of $10,000.

The case is brought to recover a fine in the sum of $1,000 plus a penalty of $90 representing a refund of passenger money imposed by the Secretary of Labor on or about October 16, 1928, under section 16 of the Immigration Act of 1924 (8 USCA § 216), for bringing in an immigrant without a proper visa.

In a case of this kind formal findings of fact and conclusions of law will have to be submitted for my signature, but, nevertheless, I think perhaps a short statement of the way in which the case has impressed me would be appropriate as supplement thereto.

II. The claim against the United States herein involved arose out of the fact that one Carlotta Duran on February 22, 1928, applied to the agent of the plaintiff, New York & Porto Rico Steamship Company, at Monte Cristo, in the Dominican Republic, for passage to the United States.

Carlotta Duran was a citizen of the Dominican Republic, and under the provisions·of the Executive Order of July 12, 1926, then in force, if she came as a visitor to the United States, she would not require any visa.

She made an affidavit at the time of her application that she was coming to the United States for pleasure. This was on a printed form, and the word "pleasure" was inserted in typewriting, and the printed form also included "And therefore in accordance with the Immigration Act of 1924, and do (sic) not require an immigration visa." There is nothing said by the passenger in this affidavit as to the period of her stay in the United States.

III. On her arrival here, Carlotta Duran was challenged, taken to Ellis Island, and there examined, together with a friend who came to Ellis Island for the hearing, and who, apparently, had arranged to employ her in Flushing, Long Island.

The board of special inquiry decided that Carlotta Duran, the passenger in question, was coming here as an immigrant without an immigration visa, and therefore decided that she must be excluded.

This exclusion was affirmed, and, in pursuance of section 16, subdivision b, of the Immigration Act of 1924, a fine, together with a passage money refund, was imposed by the Secretary of Labor upon the plaintiff as owner of the steamship Huron, on which Carlotta Duran had been brought here.

IV. An opportunity was afforded, pursuant to notice, for a hearing for remission of this fine and refund.

The plaintiff, through its New York counsel, submitted a petition with the affidavit secured as above mentioned at the time when Carlotta Duran went aboard the Huron in the Dominican Republic. This was supplemented by an argument in behalf of the plaintiff by a Washington attorney, and eventuated in a decision of the Labor Department which seems to be quite unusually well phrased and well reasoned, which held in effect that the petitioner there—the plaintiff here—had not made out a case of having exercised reasonable diligence at the last port of departure of the vessel for the United States, namely, Monte Cristo, Dominican Republic, where Carlotta Duran went on board, as to whether she was an immigrant or a temporary visitor to the United States.

From an examination of the record of the hearing in regard to her exclusion, which necessarily has had to be considered by the Labor Department in connection with the petition for remission of the fine, I think that the Secretary of Labor was not clearly wrong in imposing a fine under the Immigration Act of 1924, § 16(b) and in refusing to remit it under section 16(c).

On the contrary, I think that the Secretary of Labor had before him sufficient evidence as to the purpose of Carlotta Duran in coming here as an immigrant fully to justify the imposition of the fine and the refusal to remit.

V. At the risk of some repetition, which is almost inescapable in an informal decision of this kind, I will deal further with my approach to the case thus:

Under section 16 of the Immigration Act of 1924, it is made unlawful in subdivision a "for any person, including any transportation company, or the owner * * * of any vessel, to bring to the United States by water from any place outside thereof (other than foreign contiguous territory) (1) any immigrant who does not have an unexpired immigration visa. * * *"

As to this point I think that it is quite obvious that the board of inquiry was jus-

tified in finding that Carlotta Duran was an immigrant, and it is obvious that she did not have an unexpired immigration visa. Consequently, on the face of the case the owner of the steamship Huron, who brought her hither, had been guilty of an unlawful act.

The sanction by which such unlawful acts are attempted to be prevented is contained in section 16(b) of the Immigration Act of 1924, which provides that: "If it appears to the satisfaction of the Secretary of Labor that any immigrant has been so brought * * * the * * * owner * * * of any such vessel, shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of $1,000 for each immigrant so brought, and in addition a sum equal to that paid by such immigrant for his transportation from the initial point of departure, indicated in his ticket, to the port of arrival, such latter sum to be delivered by the collector of customs to the immigrant on whose account assessed."

Then the section proceeds to provide that the collector of the port may refuse clearance to a vessel pending a determination of the liability for payment of such sums or while such sums remain unpaid, unless sufficient bond is given.

The fine imposed in this case was $1,000, and the amount of the ticket passage money refund was $90. These sums were paid under adequate protest by the plaintiff as owner of the Huron.

Section 16 of the Immigration Act of 1924 also provides in subdivision c that (italics mine): "Such sums [referring to the fine and passage money refund] shall not be remitted or refunded, *unless it appears to the satisfaction of the Secretary of Labor that * * * the owner, master, agent, charterer, and consignee of the vessel, prior to the departure of the vessel from the last port outside the United States, did not know, and could not have ascertained by the exercise of reasonable diligence,* (1) that the individual transported was an immigrant, if the fine was imposed for bringing an immigrant without an unexpired immigration visa. * * *"

The Secretary of Labor has refused to remit the fine because he is satisfied that the owner of the steamship Huron, through its agent at Monte Cristo, in the Dominican Republic, could, if it had exercised reasonable diligence, have found out that Carlotta Duran was an immigrant and was not a traveler for pleasure on a temporary visit only to the United States.

I do not think that I could properly set aside this decision unless I was satisfied myself that the Secretary of Labor was clearly wrong in his finding. But I cannot candidly take such a position here.

It seems to me that the record clearly shows that, if more careful inquiry had been made, the agent of the steamship company at Monte Cristo might have found out what Carlotta Duran's intentions really were, and then have embodied what he discovered in affidavit form, so that, instead of having the statement of a mere conclusion, he would have had facts which would have justified the steamship company in coming to a conclusion whether it was safe for them to take her as a passenger without a visa.

In order properly to have done that he either should have satisfied himself, basing his judgment on real information, which would be preserved for the safety of his principal, that the passenger came within the Executive Order of June 12, 1926, and as a citizen of the Dominican Republic was not required to have any visa, or else that she was an immigrant, and therefore must get a visa before coming on board.

VI. I might further say that my point of view in this case is not in the least inconsistent with my position in the case of North German Lloyd v. Elting (D. C.) 43 F.(2d) 203, which was reversed in (C. C. A.) 48 F.(2d) 547, on the ground that a judgment on the pleading was there improper because an issue was raised as to the reasonableness of the action of the Secretary of Labor.

My position in this case is not inconsistent with that case, because this is a plenary hearing with all the facts which I have deemed relevant admitted, and is before me on final hearing as a trier of the facts under the Tucker Act.

Furthermore, my theory in the North German Lloyd Case may be compared to an estoppel of the government after it had issued an immigration visa.

But here we are entirely outside of the zone of any such analogy to an estoppel.

The plaintiff here was acting on its own judgment, and the Commissioner of Labor has held that this judgment was improperly exercised, because it was not preceded by reasonable diligence in ascertaining the facts on which it was exercised.

So far as I am concerned, therefore, all I have to do is to see that the Secretary of Labor in so finding was, in my opinion, not clearly wrong on the record which was before him; namely, the record offered by the plaintiff on his petition for remission of the fine.

I so hold, and consequently the judgment in this case must go for the United States against the shipowner, with costs.

VII. Counsel for the government may submit findings of fact and conclusions of law as required by the Tucker Act.