## TRANSATLANTICA ITALIANA v. ELTING, Collector of Customs.

### No. 482.

Circuit Court of Appeals, Second Circuit.

July 25, 1933.

George Z. Medalie, U. S. Atty., of New York City (George B. Schoonmaker, Asst. U. S. Atty., of New York City, of counsel), for appellant.

Kirlin, Campbell, Hickox, Keating & McGrann and Gaspare M. Cusumano, all of New York City (Delbert M. Tibbetts and Joseph F. Luley, both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

PER CURIAM.

This action is to recover for fines imposed under section 16 of the Quota Act of 1924 (8 USCA § 216) for bringing in four aliens who were excluded. The first two were mother and daughter, both born in Italy and never before in the United States. The adult alien procured a genuine re-entry permit from its proper holder, upon which was skilfully substituted the mother's photograph;

she assumed the name of the original holder. She also got hold of a birth certificate for her daughter, a child of five, which declared that she had been born in Utica, New York, and she used the name in the certificate as the child's name. The Italian authorities issued an identification certificate, probably to the original holder, but the adult also secured this. Thus armed, she went on board the plaintiff's ship; whether she or the original holder bought the ticket does not appear. The only question is as to whether the carrier could have detected the imposition. The officials in New York discovered it, when the adult alien and her husband broke down under examination and confessed. However, she had, somewhat earlier in the examination, specifically insisted that the child had been born in New York, and had shown entire ignorance of that city, though she asserted that she had lived there for a while, and this may have opened suspicion. The Secretary imposed the fines because the seal over the photograph had been tampered with, because of the testimony of the adult as to the birth of the child in New York, and because the carrier should have learned that the identity certificate of the Italian authorities had been given to the original holder, and the substitution made later. We have examined the original seal, and we cannot see the least reason to suspect from its appearance that it had been tampered with; the substitution of the photograph appears to us to be perfect enough to escape the sharpest scrutiny. The contradiction between the mother's statement that the child was born in New York and the birth certificate, was indeed material, had it been discovered, but it seems to us severe to charge the carrier with its discovery. The adult had already answered a questionnaire, which apparently she did successfully; and that was itself an examination. Taking all the facts in consideration, to say that the cross-examination ought to have been pressed far enough to disclose the contradiction, appears to us too much, though we own that it is hard to set a measure to the suspicions proper, even when all seems fair on its face; As to the identification certificate from the Italian authorities, it seems to us again extreme to require the carrier to ascertain whether the person who got it was the person applying for passage. Assuming that the original holder got the certificate, which is not proved, the photographs must have been changed later, but there was nothing to advise the carrier of this. The same is true, if the original holder bought the ticket. Her photograph on the permit would correspond with her face, and the new photograph would later correspond with the face of the alien when she presented herself to embark. The situation was thus unlike that where the carrier makes no effort to identify the buyer of a ticket and the person who embarks, except by the name used. Photographs identify the holder with the document; that is their purpose. Of course impositions are always possible, and the incentive to enter was at that time very great; still there must be some end to the care demanded. Again, the situation is unlike that in which the aliens are prima facie excludable, and must satisfy the carrier by the spoken word of their right to enter. The papers alone, which were in fact authentic in origin, were enough assurance, unless there was affirmative reason to suspect them.

The other two aliens had certificates of birth in the United States, which had been forged by a number of substitutions, which were patent upon any close scrutiny. They should at once have arrested suspicion, whose pursuit would have led to detection of the fraud. They were quite different from the forgery in the first case.

Judgment affirmed as to the first and second causes of action; reversed as to the third and fourth.